IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| MICHAEL ROXBERRY, RANDY PERDUE, BRITT MANNING, TOM GRUTSCH, THOMAS LEE SMAWLEY, BOB JOHNSON, RENAE RIDDLE, MAKENZIE SNYDER, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SNYDERS-LANCE, INC., S-L ROUTES, LLC, and S-L DISTRIBUTION COMPANY, INC., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) No. _____ ) ) ) ) ) ) |

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiffs Michael Roxberry, Randy Perdue, Britt Manning, Tom Grutsch, Thomas Lee Smawley, Bob Johnson, Renae Riddle and Makenzie Snyder (collectively "Plaintiffs"), by and through their undersigned counsel, individually and on behalf of all persons similarly situated, file this class and collective action Complaint against Defendants Snyders-Lance, Inc. ("Snyders-Lance"), S-L Routes, LLC ("S-L Routes") and S-L Distribution Company, Inc. ("S-L Distribution") (collectively referred to hereafter as "Defendants"), seeking all available relief under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA"), and applicable state laws.

Plaintiffs deliver Snyder of Hanover and Lance brands of snack products and various other brands of snack products to stores in Tennessee and surrounding states. Although Defendants classified Plaintiffs and other similarly situated drivers as independent contractors, they were in fact Defendants' employees under the FLSA and applicable state wage laws, and

were not paid for all hours worked. Plaintiffs also assert state law claims arising from this misclassification and from other unlawful conduct by Defendants.

## I. JURISDICTION AND VENUE

1. Jurisdiction over Plaintiffs' FLSA claims is proper under 29 USC §216(b) and 28 USC §1331.

2. This court has supplemental jurisdiction under 28 USC §1367 over Plaintiffs' state law claims because those claims derive from a common nucleus of operative facts.

3. Venue in this Court is proper pursuant to 28 USC §1391 in that a substantial part of the events giving rise to Plaintiffs' claims occurred within this judicial district.

## II. PARTIES

4. Plaintiff Michael Roxberry is an adult resident of Knoxville, Tennessee. From approximately February 2014 to June 2016, Mr. Roxberry worked as a delivery driver for Defendants.

5. Plaintiff Randy Perdue is an adult resident of Seymour, Tennessee. From approximately October 2011 to the present, Mr. Perdue has worked as a delivery driver for Defendants.

6. Plaintiff Britt Manning is an adult resident of Knoxville, Tennessee. From approximately December 2014 to the present, Mr. Manning has worked as a delivery driver for Defendants.

7. Plaintiff Tom Grutsch is an adult resident of Limestone, Tennessee. From approximately February 2012 to the present, Mr. Grutsch has worked as a delivery driver for Defendants.

8. Plaintiff Thomas Lee Smawley is an adult resident of Kingsport, Tennessee. From approximately May 2015 to the present, Mr. Smawley has worked as a delivery driver for Defendants.

9. Plaintiff Bob Johnson is an adult resident of Limestone, Tennessee. From approximately December 2011 to the present, Mr. Johnson has worked as a delivery driver for Defendants.

10. Plaintiff Renae Riddle is an adult resident of Bluff City, Tennessee. From approximately July 2014 to March 2015, Ms. Riddle worked as a delivery driver for Defendants.

11. Plaintiff Makenzie Snyder is an adult resident of Bristol, Tennessee. From approximately February 2013 to July 2015, Ms. Snyder worked as a delivery driver for Defendants.

12. Defendant Snyderos-Lance is a North Carolina corporation with its principal place of business located in Charlotte, North Carolina.

13. Defendant S-L Distribution is a Delaware corporation with its principal place of business located at 1250 York Street, Hanover, York County, Pennsylvania, 17331.

14. Defendants S-L Routes is a Pennsylvania limited liability company with its principal place of business located at 1250 York Street, Hanover, York County, Pennsylvania, 17331. S-L Routes is a wholly-owned subsidiary of S-L Distribution.

15. During all times material to this Complaint, Defendants were "employers" within the meaning Section 3(d) of the FLSA, 29 U.S.C. § 203(d); enterprises within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r); and enterprises engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

16. During all times material to this Complaint, Plaintiffs and the putative class members were "employees" of Defendants within the meaning of 29 U.S.C. § 203(d).

### III. FACTS

17. Defendants are in the business of distributing certain brands of snack foods to stores throughout the country, including in Tennessee and the surrounding states. Defendants maintain warehouses at various locations in Tennessee and throughout the country, including warehouses in Gray, Tennessee and Nashville, Tennessee.

18. Defendants purport to hire "independent business operators" (hereafter, "drivers"), like all of the Plaintiffs, to pick up products at their warehouses or at specially designated bins and deliver the products to stores within assigned territories. Drivers are permitted to work only after they pay substantial sums to "buy" a route and sign a form contract called a "Distribution Agreement." The price of the route is based entirely on information provided to the drivers by Defendants which is, on information and belief, inaccurate and deceptive.

19. The Distribution Agreement, which is presented to drivers as a "take it or leave" contract of adhesion, includes the following terms which are not subject to negotiation:

    a. drivers are required to purchase products from Defendants for distribution to stores;

    b. drivers may only deliver specifically authorized products to specifically authorized stores in a specifically defined territory;

    c. Defendants determine the price the drivers must pay for their products and the terms under which those products are purchased;

4

3581543.2
Case 3:16-cv-00446-HSM-HBG   Document 1   Filed 07/15/16   Page 4 of 16   PageID #: 4

d. Defendants prevent drivers from having any say in the prices paid by certain stores for the products;

e. drivers are responsible for bearing all costs and expenses for delivery of Defendants' product;

f. drivers must bear the costs of products they buy from Defendants that are stale, distressed, out of code, or otherwise not sold;

g. Defendants provide essential billing for certain stores, so the stores pay Defendants, which then pays the drivers after deducting certain costs, charges or other deductions;

h. Defendants retain the right, in their sole discretion, to assign their rights under the Agreement to another person, but drivers may not assign their rights without Defendants' consent;

i. Defendants retain the right to terminate a driver's Agreement, with all the driver's rights reverting to Defendants, if the driver fails to maintain satisfactory services or fails to meet the requirements of Defendants' customers;

j. If a driver is temporarily unable to provide deliveries by reason of short term illness, emergency, holiday, or vacation, and is unable to arrange for replacement services, Defendants may provide such services at the driver's expense;

k. When an Agreement is terminated, Defendants have the right to operate the driver's territory for Defendants' own account;

l. When a driver sells his or her rights to a territory, such sale must be approved by Defendants and the driver must pay a percentage of the proceeds to Defendants.

5

20. Prior to executing the Distributor Agreements, Defendants' representatives made certain representations to Plaintiffs regarding the system and manner Defendants would use to compensate Plaintiffs.

21. Defendants' representatives made these statements with full knowledge that they would be relied upon by Plaintiffs, and in fact intended for Plaintiffs to rely upon these representations. Upon information and belief, these representations regarding Defendants' compensation system were false, misleading and deceptive.

22. Defendants implemented a convoluted and deceptive system of compensating the drivers to prevent the drivers from being able to determine if they have been properly and accurately compensated for their services.

23. For example, Defendants routinely and unilaterally change the system under which the drivers are paid without any prior notice or explanation.

24. Defendants issue weekly statements to the drivers, but those statements regularly contain confusing and seemingly inaccurate information. For example, drivers who pick up products from Defendants' warehouses during one business week are routinely charged for those products in the prior weeks' accounting. On information and belief, drivers have been charged for products that they did not actually receive.

25. When drivers have asked Defendants for clarification of the statements, Defendants have been unable or unwilling to provide clarification. Instead, Defendants pressure drivers to make payments allegedly owed to Defendants, on threat of termination, even when the basis for those allegedly owed amounts remained unclear or in dispute.

6

26. As a result of this convoluted and deceptive compensation system, drivers routinely go several weeks, and in some cases months, without receiving any compensation for their services.

27. The primary duties of Defendants' drivers, including Plaintiffs, are driving a truck, delivering Defendants' products, placing orders by hitting buttons on their handheld devices, removing expired products, loading and unloading their trucks, and stocking shelves, among other non-exempt tasks.

28. Drivers are required to pay all costs in making deliveries, including buying products from Defendants, providing a truck, paying for fuel, and obtaining insurance, together with other costs. When drivers go to one of Defendants' warehouses to pick up products, the drivers are charged for the products at prices determined solely by Defendants. When the driver delivers products to their assigned stores, the majority of the prices paid by said stores are determined by Defendants and have been negotiated between Defendants and the stores. Some of the stores pay the drivers directly, but most of the stores pay Defendants, who are then supposed to credit the driver for the payments.

29. As a result of the prices Defendants charge the drivers for their products and the prices Defendants negotiate with their customers stores, it is not uncommon for the drivers to pay more for Defendants' products than they are able to sell them to Defendants' customer stores.

30. The amount of shelf space to which Defendants are entitled in their customer's store is negotiated by Defendants, and not the drivers, and is memorialized through "plan-o-grams" and/or merchandising plans and/or similar documents. Drivers are not permitted to vary from these "plan-o-grams" and/or merchandising plans and/or similar documents in utilizing shelf space to stock shelves.

3581543.2

31. Defendants, and not drivers, negotiate with the majority of Defendants' customers concerning, among other things: the initial or continued right to carry Defendants' products in the customer's store; the price of Defendants' products; if and when a product promotion will run; how Defendants' products are advertised; the terms of the product promotion; how much shelf space is allocated for products; authorization for new items; authorization for price changes; which of Defendants' products are carried by the customer; and where Defendants' products are placed in the store.

32. On various occasions Defendants have been unable or unwilling to provide all products requested by the drivers to meet the needs of the stores in their territory. As a result, stores have terminated their business or made complaints, through no fault of the drivers. When that happens, drivers suffer adverse consequences, including a loss of income or threat of termination.

33. Defendants employ office and supervisory personnel who work at their warehouses, as well as other locations and offices around the country. These employees regularly supervise and direct drivers in regards to deliveries and responding to customer complaints or issues.

34. Based on the nature of Defendants' business and the services performed by the drivers for Defendants, the drivers performed services for Defendants within the usual course of Defendants' business.

35. The drivers perform core work that is necessary and essential to Defendants' business.

36. Defendants have intentionally misclassified Plaintiffs and the other drivers to avoid their obligations under the FLSA and state wage laws.

## IV. COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

37. Plaintiffs bring this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the FLSA class.

38. Plaintiffs desire to pursue their FLSA claim on behalf of all individuals who opt in to this action pursuant to 29 U.S.C. § 216(b).

39. Plaintiffs and the putative FLSA class are "similarly situated" as that term is used in 29 U.S.C. § 216(b) because *inter alia*, all such individuals currently work or worked pursuant to Defendants' previously described common business and compensation practices as described herein, and, as a result of such practices, have been misclassified as independent contractors and have not been paid the fully and legally mandated minimum for all hours worked. Resolution of this action requires inquiry into common facts including, but not limited to, Defendants' common misclassification, compensation and payroll practices.

40. Specifically, Defendants misclassified Plaintiffs and the FLSA class as independent contractors and paid them on a straight commission basis.

41. The similarly situated employees are known to Defendants, are readily identifiable, and can be easily located through Defendants' business and human resources records.

42. Defendants employ many putative class members throughout the United States. These similarly situated employee may be readily notified of this action through U.S. Mail/or other means, and allowed to opt into this action pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages (or, alternatively, interest) and attorneys' fees and costs under the FLSA.

3581543.2
Case 3:16-cv-00446-HSM-HBG Document 1 Filed 07/15/16 Page 9 of 16 PageID #: 9

## V. CLASS ACTION ALLEGATIONS

43. Plaintiffs further bring this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and the class of drivers who work for Defendants within the State of Tennessee (the "Tennessee Class"). The members of the Tennessee Class are so numerous that joinder of all members is impractical.

44. Plaintiffs will fairly and adequately represent and protect the interests of the Tennessee Class because there is no conflict between the claims of Plaintiffs and those of the Tennessee Class, and Plaintiffs' claims are typical of the claims of the Tennessee Class. Plaintiffs' counsel is competent and experienced in litigating class action and other complex litigation matters, including wage and hour cases like this one.

45. There are questions of law and fact common to the proposed Tennessee Class, which predominate over any questions affecting only individual class members.

46. Plaintiffs' claims are typical of the claims of the Tennessee Class in the following ways, without limitation:

    a.    Plaintiffs are members of the Tennessee Class;

    b.    Plaintiffs' claims are based on the same policies, practices and course of conduct that form the basis of the claims of the Tennessee Class;

    c.    Plaintiffs' claims are based on the same legal theories of those of the Tennessee class and involve similar factual circumstances;

    d.    There are no conflicts between the interests of Plaintiffs and the Tennessee Class; and

    e.    The injuries suffered by Plaintiffs are similar to the injuries suffered by the Tennessee Class.

47. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Tennessee Class predominate over any questions affecting only individual class members.

48. Class action treatment is superior to the alternatives to the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single form simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Tennessee Class is readily identifiable from Defendants' own records. Prosecution of separate actions by individual members of the Tennessee Class would create the risk of inconsistent or varying adjudications with respect to individual Tennessee Class members that would establish incompatible standards of conduct for Defendants.

49. A class action is superior to all other available methods for the adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the Tennessee Class, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

50. Without a class action, Defendants will retain the benefit of its wrongdoing, which will result in further damages to Plaintiffs and the Tennessee Class. Plaintiffs envision no difficulty in the management of this action as a class action.

**COUNT I**
**VIOLATION OF THE FLSA (ON BEHALF OF PLAINTIFFS AND THE FLSA CLASS)**

51. Plaintiffs incorporate the above paragraphs as if fully set forth herein.

52. Defendants are subject to the wage requirements of the FLSA because Defendants are employers under 29 USC § 203(d).

53. At all relevant times, Plaintiffs and the putative class members are covered employees entitled to the FLSA protections.

54. At all relevant times, Defendants are employers engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203.

55. Plaintiffs and the putative class members are not exempt from the requirements of the FLSA.

56. Plaintiffs and the putative class members are entitled to be paid the applicable minimum wage and overtime for hours worked over 40 in a work week.

57. Defendants do not maintain accurate records of all hours Plaintiffs and the putative class members worked each work day and the total number of hours worked each work week as required by the FLSA.

58. Defendants, pursuant to their policies and practices, knowingly failed to pay Plaintiffs and the putative class members minimum wage and overtime compensation for all hours worked over 40 in a work week in violation of the FLSA.

59. Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

60. During their employment with Defendants, Plaintiffs and the putative class members regularly and routinely worked in excess of 50 hours in each work week.

## COUNT II
## UNJUST ENRICHMENT
### (ON BEHALF OF PLAINTIFFS AND THE TENNESSEE CLASS)

61. Plaintiffs incorporate the above paragraphs as if set forth fully herein.

12

62. Defendants have received and benefited from the uncompensated labors of Plaintiffs and the Tennessee Class, such that to retain said benefit without compensation would be inequitable and give rise to the level of unjust enrichment.

63. At all relevant times hereto, Defendants devised and implemented a plan to increase their earnings and profits by fostering a scheme of securing work from Plaintiffs and the Tennessee Class without paying wages for all hours worked, by making unauthorized reductions from Plaintiffs' pay, and by requiring Plaintiffs to pay for Defendants' own business expenses.

64. Plaintiffs and the Tennessee Class are entitled to judgment in an amount equal to the benefits unjustly retained by Defendants.

## COUNT III
## BREACH OF CONTRACT
## (ON BEHALF OF PLAINTIFFS AND THE TENNESSEE CLASS)

65. Plaintiffs incorporate the above paragraphs as if set forth fully herein.

66. Defendants materially breached their duties under the Distributor Agreements in various respects, including, but not limited to, failing to provide Plaintiffs with agreed upon products and unilaterally changing the terms and conditions under which Plaintiffs and the Tennessee Class were compensated and reimbursed.

67. Defendants' breach of the Distributor Agreements has caused Plaintiffs and the Tennessee Class members to incur significant costs, expenses and losses which Plaintiffs and the Tennessee Class would not have incurred had Defendants performed their obligations under the Distributor Agreements.

68. These costs, expenses and losses are a direct and proximate result of Defendants' breach of the Distributor Agreements.

69. As a result of the foregoing, Plaintiffs and the Tennessee Class have suffered damages in amounts to be determined at trial which are a direct and foreseeable result of Defendants' material breach of their contractual obligations.

## COUNT IV
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
## (ON BEHALF OF PLAINTIFFS AND THE TENNESSEE CLASS)

70. Plaintiffs incorporate the above paragraphs as if fully set forth herein.

71. There is an implied covenant of good faith and fair dealing requiring Defendants to deal with Plaintiff and the Tennessee Class with the utmost good faith and to deal fairly with Plaintiffs and the Tennessee Class in the implementation and execution of the contract terms and with respect to their contractual relationship.

72. For the reasons set forth above, Defendants have breached such covenant to the Plaintiffs' and the Tennessee Class's detriment, resulting in damages to Plaintiffs and the Tennessee Class.

## COUNT V
## VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT
## (ON BEHALF OF PLAINTIFFS AND THE TENNESSEE CLASS)

73. Plaintiffs incorporate the above paragraphs as if fully set forth herein.

74. Plaintiffs bring this Count under the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. §47-18-101, *et seq.*

75. Plaintiffs are consumers within the meaning of Tenn. Code Ann. §47-18-103.

76. Defendants are persons within the meaning of Tenn. Code Ann. §47-18-103.

77. Defendants engaged in trade, commerce and/or consumer transactions within the meaning of Tenn. Code Ann. §47-18-103.

78. Through their actions and conduct set forth above, Defendants committed or engaged in unfair or deceptive acts or practices affecting the conduct of trade or commerce and which constituted unlawful acts or practices in violation of Tenn. Code Ann. §47-18-104(a).

79. Through their actions and conduct set forth above, Defendants have also violated particular subsections of Tenn. Code Ann. §47-18-104(b) by, among other acts: representing that goods or services have sponsorship, approval, characteristics, benefits or quantities that they do not have; representing that goods or services are of a particular standard, quality or grade, when they are of another; representing that a consumer transaction confers or involves rights, remedies or other obligations that it does not have or involve; and engaging in other acts and practices which are or were deceptive to Plaintiffs.

80. Plaintiffs have suffered ascertainable loss of money, property and/or things of value in amounts to be determined at trial which are the direct and proximate result of Defendants' use or employment of unfair and deceptive acts and practices that are prohibited by the TCPA or are in violation of Tenn. Code Ann. §47-18-104(a) and (b).

81. Defendants' unfair or deceptive acts or practices were willful and/or knowing. Thus, Plaintiffs are entitled to treble damages under Tenn. Code Ann. §47-18-109.

## JURY DEMAND

82. Plaintiffs request a trial by jury on all of their claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek the following relief on behalf of themselves and all other similarly situated:

1. A declaration that Defendants misclassified Plaintiffs and class members as independent contractors instead of employees;

3581543.2
Case 3:16-cv-00446-HSM-HBG   Document 1   Filed 07/15/16   Page 15 of 16   PageID #: 15

2. An order permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b);

3. An order permitting this litigation to proceed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Tennessee Class;

4. Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential members of the FLSA class;

5. Declaratory relief requiring Defendants to comply with all applicable federal and state laws and to cease their illegal practices;

6. A judgment in favor of Plaintiffs and class members for all penalties compensatory damages, punitive damages and/or liquidated damages allowed by law;

7. An award of prejudgment and post-judgment interest to Plaintiffs and class members;

8. An award of attorneys' fees and costs as provided by law; and

9. Any other relief to which the Plaintiffs and class members may be entitled.

Respectfully submitted this 15th day of July, 2016.

    **WOOLF, McCLANE, BRIGHT,**
      **ALLEN & CARPENTER, PLLC**

    *s/J. Keith Coates, Jr.* _____
    J. Chadwick Hatmaker, Esq. (BPR No. 018693)
    J. Keith Coates, Jr., Esq. (BPR 025839)

    Post Office Box 900
    Knoxville, Tennessee 37901-0900
    (865) 215-1000
    (865) 215-1001 (Fax)